WAYNE A. SILVER, Esq. (108135)
333 West El Camino Real, Suite 310
Sunnyvale, California 94087
Tel. (408) 720-7007
Fax. (408) 720-7001
email: w_silver@sbcglobal.net

Attorney for Plaintiff/Debtor-in-possession,
NOBEL GROUP, INC.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>NOBEL GROUP, INC.,<br><br>      Debtor-in-possession. | Case No.: 10-55902-ASW<br>Chapter 11 |
| NOBEL GROUP, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>NARA BANK,<br><br>      Defendant. | Adversary Proceeding No. 12-05023<br><br>**STIPULATION FOR COMPROMISE OF CONTROVERSY** |

COME NOW Plaintiff NOBEL GROUP, INC. ("NOBEL"), and Defendant NARA BANK ("NARA"), now known as BBCN Bank ("BBCN") (collectively, the "Parties"), by and through their undersigned attorneys of record, and hereby stipulate and agree as set forth below.

**I.    FACTUAL RECITALS**

1.    Plaintiff NOBEL is a corporation organized under the laws of the State of Arizona and a debtor-in-possession under Chapter 11 of the U.S. Bankruptcy Code pursuant to a voluntary petition filed on or about on June 6, 2010 ("Petition Date") in the above-captioned Bankruptcy Case No. 10-55902-ASW (the "Chapter 11 Case") pending in the San Jose Division of the above-entitled U.S. Bankruptcy Court for the Northern District Of California (the "Bankruptcy Court").

2.    Defendant NARA was a corporation organized under the laws of the State of California doing business in Santa Clara County, California, and a subsidiary of Nara Bancorp, Inc.

Page - 1

Stipulation for Compromise of Controversy

Nara Bancorp, Inc. merged with an entity known as Center Financial Corporation after the above-captioned Adversary Proceeding No. 12-05023 ("Adversary Proceeding") was filed, and is now known as BBCN Bank, successor in interest to NARA Bank.

3. On or about February 7, 2007 NOBEL and NARA entered into a Business Loan Agreement, Security Agreement and Promissory Note (the "NARA Loan Agreements") wherein NOBEL borrowed the sum of $200,000 from NARA (the "NARA Loan"). The NARA Loan was personally guaranteed by Gregory T. Malley ("Malley"), NOBEL's President and Responsible Individual.

4. The NARA Loan was secured by a second trust deed recorded on or about March 7, 2007 on that certain real property commonly known as 2585 El Camino Real, Santa Clara, California (the "2585 Property").

5. NARA contends the NARA Loan is also secured by a security interest in certain collateral described in the NARA Loan Agreements (the "NARA Lien"). NARA also contends the NARA Lien encumbers the proceeds from the sale of Homesteads Lanes, as described *infra*. NOBEL disputes these contentions.

6. NOBEL was the lessee under an oral lease agreement (the "Original Lease") predating the Petition Date for the commercial premises located at 20990 Homestead Road, Cupertino, California ("Homestead Property"), on which NOBEL was operating a business commonly known as Homestead Lanes ("Homestead Lanes"). NOBEL leased the Property from Silver Creek Yuba, LLC ("Silver Creek").

7. Silver Creek asserted NOBEL was in default under the terms of the Original Lease, and the time had expired for the assumption or rejection of the Original Lease under the Federal bankruptcy laws. Silver Creek filed a proof of claim for unpaid rents owed prior to the Petition Date in the total sum of $1,197,482.00 (the "Bankruptcy Claim"). NOBEL disputed these assertions and the Bankruptcy Claim.

8. NOBEL asserted on the other hand that Malley and NOBEL had a partnership agreement with Silver Creek to operate Homestead Lanes and eventually develop the Homestead Property. While Silver Creek acknowledged that NOBEL and/or Malley contributed funds toward

the acquisition of the Property, Silver Creek otherwise disputed this contention, in part because Silver Creek had incurred significant expenses related to the operation and maintenance of the Homestead Property, and repaid secured loans against the Homestead Property, for which it was never reimbursed. Silver Creek on the one hand, and NOBEL and Malley on the other, disputed these various contentions.

9. After extensive settlement discussions with Silver Creek, NOBEL negotiated a new short term lease for Homestead Lanes, coupled with a compromise and settlement of various disputes with Silver Creek, and a sale of the Homestead Lanes' business and assets to Silver Creek, along with the liquor license that was held in Malley's name[1].

10. In furtherance of this compromise, Silver Creek and NOBEL executed a Settlement Agreement and Mutual Release of Claims Combined with Purchase and Sale Agreement ("Silver Creek Settlement Agreement"). The Silver Creek Settlement Agreement resolved any and all claims and disputes by and between NOBEL and Silver Creek arising out their business relationship relative to the ownership, management and acquisition of the Homestead Property, Homestead Lanes, and their landlord tenant relationship, including but not limited to the Original Lease, Interim Lease and Bankruptcy Claim, without any admission of liability.

11. Pursuant to the Silver Creek Settlement Agreement, Silver Creek agreed to pay NOBEL the sum of $305,000 ("Silver Creek Settlement Payment"). An initial payment of $100,000 has been made and is being held in a segregated debtor-in-possession account at Chase Bank, Account No. xxx-6547 ("Silver Creek Segregated Account") pending further order of the Bankruptcy Court. The balance of the Silver Creek Settlement Payment will be paid over three (3) years in equal quarterly payments.

12. The Bankruptcy Court approved the Silver Creek Settlement Agreement and compromise with Silver Creek, and authorized NOBEL to sell Homestead Lanes to Silver Creek free and clear of any claim or interest of NARA Bank, with such claim or interest attaching to the proceeds from the compromise, by Order entered on November 9, 2011 (the "Homestead Lanes Sale

---

[1] This sale has been approved in Malley's individual Chapter 11 case pending before this Court as Case No. 10-59336 filed on September 7, 2010

Order"). The Homestead Lanes Sale Order further provided that "Nothing herein shall waive or impair the Debtor's right to challenge any and all liens and claims of NARA Bank, including but not limited to the nature, extent, validity and priority of any such liens and claims. The Debtor reserves all rights and remedies."

13. NOBEL filed the Adversary Proceeding against NARA to seek declaratory relief about the nature, extent and priority of the NARA Lien, including but not limited to the extent to which it encumbered the Silver Creek Settlement Payment.

## II. AGREEMENT

14. The foregoing Factual Recitals are hereby acknowledged by the Parties and incorporated herein as an integral part of this agreement.

15. In consideration of the mutual covenants, conditions and promises contained herein, the allocation and payment of the funds in the Silver Creek Segregated Account referred to herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

 (A) The funds in the Silver Creek Segregated Account shall be divided equally between NOBEL and NARA.

 (B) All future Silver Creek Settlement Payments shall continue to be deposited into the Silver Creek Segregated Account and thereafter divided equally between NOBEL and NARA, unless and until NARA has been paid in full from the sale of the 2585 Property.

 (C) All funds paid to NARA from the Silver Creek Segregated Account pursuant to this Agreement shall be applied to the principal balance of the NARA Loan, the remaining balance of which shall continue to be secured by the NARA Lien and second trust deed on the 2585 Property.

 (D) NOBEL shall transfer its portion of the funds in the Silver Creek Segregated Account pursuant to this Agreement to its general Debtor-in-possession operating account, which funds shall thereafter be free and clear of any lien, claim or interest of NARA.

 (E) This Agreement is subject to approval by the Bankruptcy Court.

 (F) NOBEL and NARA otherwise reserve all rights and remedies, including NARA's right to payment from the sale of the 2585 Property.

16. Upon final approval of this Agreement by the Bankruptcy Court, NOBEL shall cause the Adversary Proceeding to be dismissed without prejudice, with each side to bear its respective attorneys' fees and costs,

Dated: March 5, 2013  /s/ Wayne A. Silver
Wayne A. Silver, attorney for Plaintiff
NOBEL GROUP, Inc.

Dated: March 5, 2013  HEMAR, ROUSSO & HEALD

/s/ Jennifer Crastz
Jennifer Crastz, attorney for BBCN Bank, as successor in interest to Defendant NARA Bank